Rexford *v.* Marquis.

---

BENJAMIN F. REXFORD, Appellant, *v.* JAMES B. MARQUIS, Respondent.

(GENERAL TERM, THIRD DEPARTMENT, MAY, 1872.)

7  249
130a 471
7  249
78h 145
7 L   249
37 Mis⁴112

A conveyance of land and a public-house thereon by metes and bounds, concluded thus, "it being the intention of the party of the first part to convey twenty-one feet and four inches of the north part of said public-house, together with the use of a lane or passway, twelve feet wide, from the green, and in rear of the said public-house, to the north line of the lot above deeded, to be kept open for the purpose of passing to and from the rear of said public-house to the public common." *Held,* the premises over which the way ran being included in the grant so qualified, that it was intended to except such premises, other than the use thereof as a way, from the deed.

*Held,* further, that the use of the way was not reserved, but excepted from the deed.

And that the exception was for the benefit of the grantor and his assigns.

Conveyance of the use of a way, subject to the rights of a third party to pass over it, "to be kept open as a passway," held to intend that the

Rexford *v.* Marquis.

passway should be kept open for the benefit of the grantor and his assigns.

Separate deeds to different grantees, from the same grantor, will not be construed together in determining rights of the grantees in relation to a common subject-matter.

The plaintiff's claim to a right of way being based on his user under a grant, and defendant's acquiescence and recognition of his right, *held,* that the user was evidence of the extent of the right, but not to prove its existence.

The grantee of a right of way to one piece of land cannot make use of it to pass into another and adjacent piece.

Thus, a right to use a way from a common to the boundary line of a particular lot will not authorize communication with an adjacent lot by means of the way.

Where an action is brought in equity and the demand is for purely equitable relief, the trial of questions of fact by the court is in its discretion.

*Held,* further, that the plaintiff was only entitled to a limited right of way, and such as was reasonably necessary and convenient for the purposes of the grant, and, accordingly, a judgment below, limiting it to eleven feet in height and allowing it to be covered, affirmed.

APPEALS by plaintiff and defendant from a judgment entered on the decision of a justice, at Special Term, in favor of the plaintiff.

The action was brought to compel the defendant to remove a building erected across an alleged passway, and to open the way for the benefit of the plaintiff. The case was tried before Mr. Justice BALCOM at Special Term, who found, in substance, the following facts :

That in February, 1842, one Thomas Milner, Sr., owned a piece of land in Norwich, Chenango county, fronting on Main street, a street running in a direction from north to south.

The piece or tract was in shape a parallelogram, having its frontage to the east and on Main street of the width of eighty-eight feet. On the south it was bounded by a public common, along which it ran westward to the depth of eighty-three feet, thence northward to property owned by the Chenango Bank (eighty-eight feet), and thence eastward to Main street (eighty-three feet).

On the 21st February, 1842, Milner, Sr., was occupying

Rexford *v.* Marquis.

a public tavern on the premises, of a size, and situation thereon, as follows, viz.: The main building was in shape a parallelogram, with a frontage eastward on Main street and southward on the common, and having a width on Main street of sixty-five feet four inches. Its rear ran along a line parallel with Main street, at the distance of fifty feet and six inches therefrom, and extending sixty-five feet four inches to the north line or side of the building.

On this rear or west line of the building, forty-four feet from the common, or south boundary, an L, or wing at right angles, projected from the rear of the main building, of the width of the remainder thereof (twenty-one feet four inches), and extended back to the rear boundary of the lot; the depth of the L (thirty-two feet six inches) and portion of the main building, which it adjoined (fifty feet six inches), extending together the depth of the whole lot (eighty-three feet). The land to the west or rear of the west line of the tavern, except as occupied by the wing, was open up to the west line of the lot, or parallelogram.

On the 21st February, 1842, Milner, Sr., made a conveyance to one Kershaw of a portion of the tavern lot, viz., a lot having a front on Main street of twenty-one feet four inches (measuring southerly from the north-west corner of the tavern), and being of the same width throughout its depth (eighty-three feet) to the rear of the lot. This conveyance covered precisely the ground upon which the L of the tavern and the portion of the building to which the L was adjoined were situated, and it conveyed the premises, describing them by metes and bounds. Following the description, however, was this: "It being the intention of the party of the first part to convey twenty-one feet four inches of the north part of the said public-house, together with the use of a lane or passway, twelve feet wide, from the green, and in rear of the said public-house, to the north line of the lot above deeded, to be kept open for the purpose of passing to and from the rear of the said public-house to the public common."

The portion of the original lot retained by Milner, Sr., north of the north line of the tavern and tavern wing (being a strip thirty feet eight inches in width and running eighty-three feet from Main street to the rear boundary of the lot), at the time of the conveyance to Kershaw was unoccupied by any building, but, sometime prior to 1845, a store adjacent to the tavern lot, covering twenty-two feet eight inches, or all but eight feet of the strip in width, and extending, in depth, from Main street, fifty feet and six inches to the west line of the main tavern building, was erected thereon.

Kershaw took possession under his deed, and in 1843 removed twelve feet, in depth, of the tavern L, from where it adjoined the rear of the main building, and opened and used the space on which so much of the L had stood, as a continuation of a way leading from the common, along the rear of the tavern. By this continuation of the way it was extended to the property on the north of the north tavern line.

February 21st, 1842, Milner, Sr., conveyed to one De Forest a lot twenty-one feet four inches in width on Main street, and described as bounded north by the lot of Kershaw, west by a line twelve feet westerly of the tavern building, and south by a line parallel with Kershaw's south line, with a clause as follows : " Also the use of twelve feet wide from the green to the twelve feet above deeded, reserving the right to James Kershaw and his assigns to pass and repass across the said twelve feet in rear of the house, which is to be kept open as a passway." De Forest took possession under his deed.

On the 7th March, 1842, Milner, Sr., conveyed to Milner, Jr., all of the original lot, eighty-eight feet north and south, and eighty-three feet east and west, except the two lots deeded to Kershaw and De Forest, and reserving those lots as conveyed. Milner, Jr., then took possession, under the deed, of the premises granted to him, and from the date of his conveyance until in the spring of 1845, continued to occupy them and to use and occupy the lane, or passway, twelve feet wide from the common, through the

Rexford *v.* Marquis.

premises opened by Kershaw, and along the rear of the tavern, to his premises, on the north of the premises of Kershaw.

There were other conveyances, of the property contained in the original tract, which recognized, and undertook to provide for the passway.

Sometime in March, 1845, Milner, Jr., sold a lot to Rexford, the plaintiff, described as eight feet wide and extending from Main street eighty-three feet deep, bounded north by the north line of the eighty-eight by eighty-three feet plot; south by a line parallel thereto and eight feet distant therefrom; also "the privilege of using the lane running back of the store of the said party of the first part." The plaintiff entered into possession and used the land from the common to the lands covered by his deed from Milner, Jr., and continued in such use and occupation for more than twenty years, and until interference therewith by the defendant.

In 1845 the plaintiff erected upon the premises conveyed to him by Milner, Jr., and other premises adjoining on the north thereof, which he had purchased from the Chenango Bank, a two-story stone building, fifty feet in depth, and extending from Main street to the lane; and Milner, Jr., also built upon his remaining premises, adjoining the plaintiff's on the south, a like building.

On the 1st April, 1856, Kershaw, who had occupied the lot granted to him by Milner, Sr., from February 21, 1842, up to that time, conveyed to the defendant, with the same conditions, reservations, &c., as to the passway or lane, as were contained in the deed to him (Kershaw), and the defendant entered into possession. In the same year (1856) the defendant erected a building over the passway, not at first obstructing the way, but afterward he inclosed and obstructed it completely, but in such manner that it could be reopened; there was a promise made by the defendant to the plaintiff, when the former thus closed the way, to remove the obstruction whenever requested by the plaintiff to do so; and the defendant, in consideration of the plaintiff's permitting the obstruc-

tion across the way to remain, shared with the plaintiff the expense of carrying fuel into the latter's premises; the last payment for such expense being made to the plaintiff in January, 1865.

In January, 1865, the plaintiff demanded the removal of the building which obstructed the way, and in December, 1868, a final refusal was made by the defendant to remove the building or open the way; the defendant then first claiming a right to occupy and obstruct the same.

The court also found as follows: That the plaintiff had held peaceable possession of the use of the lane for more than twenty years, and that the lane and way had been used and occupied by the plaintiff as a lane to the premises north of the defendant's land, adversely to the defendant and his grantor, for more than twenty years when the defendant obstructed the same.

And in the thirteenth finding of fact, that a lane eleven feet high through the defendant's building, upon the level of the lane south of defendant's premises, would be sufficiently large and light for plaintiff's use, and substantially as convenient for the purposes for which it was intended and had been used before obstructed.

Also that Jas. Kershaw, in receiving the deed from Milner, Sr., and Milner, Sr., in giving the deed, intended to reserve to Milner, Sr., and his assigns, the right to use the lane across the premises granted to Kershaw.

The court also rendered judgment for the plaintiff upon conclusions of law as follows, viz.:

" I. The plaintiff, by the deeds given in evidence, became and is entitled to the use of the lane in question as a lane or passway from the public green to his land along the rear of said public-house and twelve feet wide.

" II. The plaintiff has also a right to the use of such lane by prescription for the purpose of carrying fuel to his office, and for footmen to pass and repass.

" III. The defendant may lawfully cover such passageway with a building, if he leave a space so high and light that the

way is substantially as convenient for the purposes for which it was reserved and has been used as before the erection of such building.

" IV. A passage twelve feet in width and eleven feet high will be sufficient for the purposes for which it was reserved and has been used.

" V. The defendant is not bound to open said passageway clear up through his building.

" VI. The defendant must open the passway, as above stated, twelve feet wide and eleven feet high, by the first day of January, 1871, provided the judgment herein shall have been entered and a certified copy thereof served fifteen days prior thereto, in accordance with the provisions of section 285 of the Code. If not so entered by December 15th, then fifteen days after service of notice of judgment."

The defendant's counsel made certain requests to find, which are as follows:

" I. That the plaintiff acquired no right of way, under the deeds given in evidence, to or in favor of the land which he purchased of Thomas Milner.

" II. That the plaintiff acquired no right of way, under the deeds given in evidence, to or in favor of the land which he purchased of the Bank of Chenango.

" III. That the plaintiff has not acquired a right of way to or in favor of the land which he purchased of Thomas Milner by user.

" IV. That the plaintiff has not acquired a right of way to or in favor of the land which he purchased of the Bank of Chenango by user.

" V. That the plaintiff has not enjoyed and possessed for twenty years the right of way adversely to this defendant and his grantor.

" VI. That a title or right to this way cannot be acquired by adverse possession.

" VII. That the plaintiff, by uniting the piece of land purchased of the Bank of Chenango with the land he purchased of Thomas Milner, Jr., lost all right of way which existed

under the deeds put in evidence in favor of the land purchased of Milner.

"VIII. That the plaintiff, by the erection of his office partly upon the land purchased of Milner and partly upon the land purchased of the Bank of Chenango, so increased the burden of the way reserved in the deeds that the right was lost.

"IX. That the division of the land lying north of the defendant's into two estates, and the erection of the buildings so increased the burden of the easement reserved in the deeds, that the same was lost.

"X. That the plaintiff has no right to a way for any purpose, except for footmen to pass and repass and for drawing fuel to his office.

"XI. That defendant may place convenient and proper doors across said passway on his north and south lines, the plaintiff to be furnished with a key thereto, and said doors remain closed and locked, except when in use by the plaintiff."

And the justice, in addition to the findings contained in his decision, found and refused to find as follows.

"I find as a question of fact and in addition to the findings contained in my said decision:

"I. That there has been no grant, exception or reservation of the right of way, except by the deed from Milner to Kershaw, and the deeds put in evidence and the contract testified to by the plaintiff, given to him by Milner for the sale of the eight feet of land subsequently conveyed by Milner to him by deed. And I also find that all user of the right of way has been since the date of the deed to Thomas Milner, Jr., in evidence.

"II. I do further specify and find that, upon the settlement of this case as aforesaid the defendant presented to and asked me to find and decide in his favor upon each and every of the eleven requests hereinbefore set forth, being the same requests submitted on his behalf upon the argument, and I declined and refused each and every of said requests severally."

The defendant's counsel duly excepted to the several

Rexford v. Marquis.

refusals to find as requested, and also to some of the various findings; and to the latter as follows:

"1st. He excepts to every finding of fact limiting the passageway to eleven feet in height.

"2d. He excepts to every finding of fact denying to the plaintiff, or tending to deny to him, a passageway without cover.

"3d. The plaintiff excepts to the conclusion of the said judge allowing the defendant to build over the passageway in suit.

"4th. The plaintiff excepts to the finding of the said judge that a passway eleven feet high was a sufficient passway.

"5th The plaintiff excepts to each and every portion of the thirteenth finding of fact, and to each separate allegation of fact therein contained.

"6th. The plaintiff excepts to the decision of the said judge that the defendant may lawfully cover such passway with a building as contained in his third conclusion of law.

"7th. The plaintiff excepts to the finding in his fourth conclusion that a passageway eleven feet high will be sufficient for the purposes for which it was reserved and has been used.

"Lastly. The plaintiff excepts to the conclusion of the said judge that the defendant is not bound to open said passageway clear up through his building."

The defendant's counsel also, at the close of the plaintiff's testimony, moved for a nonsuit on various grounds, which motion was refused, and exception taken to the ruling. He also renewed his motion at the close of the evidence, which was denied, and an exception duly taken. A judgment was entered upon the decision of the justice, and the defendant appealed upon the ground that the plaintiff was not entitled to a right of way; and the plaintiff appealed upon the ground that he was entitled to an unlimited and open right of way.

*Isaac S. Newton*, for the plaintiff.

*David L. Follett*, for the defendant.

Present—MILLER, P. J., POTTER and PARKER, JJ.

MILLER, P. J.    The plaintiff's claim to the right of way in question in this action is sought to be maintained, first, by virtue of the deed from Thomas Milner to James Kershaw, the defendant's grantor; and, secondly, as a prescriptive right, acquired by the plaintiff by virtue of a conveyance to him by Thomas Milner, Jr, on the fifth day of November, 1845, and the subsequent use of the same, with the acquiescence of the defendant and his assent to the right claimed by the plaintiff.

*First.* As to the deed from Milner to Kershaw, it conveys a lot of land by boundaries, and then concludes as follows: "It being the intention of the parties of the first part to convey twenty-one feet and four inches of the north part of the said public-house, together with the use of a lane or pass-way, twelve feet wide, from the green, and in rear of the said public-house, to the north line of the lot above deeded, to be kept open for the purpose of passing to and from the rear of the said public-house to the public common."

By the language employed I think it is apparent that the parties intended only to convey the land, and to except the lane or passway from the effect of the conveyance. The concluding sentence, above cited, qualifies the description so as to exclude from it the lane or passway, except the use thereof in common with others. The deed conveyed the land to the grantee, subject to the use of the lane or passway, which it declared should be kept open. The grantee owned other lands at the north as well as south of the premises conveyed; and it was the manifest and clear intention of the parties that the lane or passway should be kept open and used as might be required for the benefit of the lands thus situated. If it was designed only for the use and advantage of the grantee, it was unnecessary to provide that it should be "kept open for the purpose of passing to and from the rear of the public-house to the public common;" as the grantee had such a right on his own land, independent of any such provision.

In *Watts* v. *Kinney* (6 Hill, 82) a lease of a mill, after an

absolute demise, with a full use of the water, contained a further clause restricting the use of the water; and it was held that the lessee did not acquire an unqualified right of using all the water which the dam would contain; but that he must so use the dam as not to raise the water beyond what was provided for in the last condition of the lease. (See *S. C.*, 14 Wend., 41; and 23 id., 486.) This case is directly in point, and sustains the position that the provision in the deed relating to the passway qualifies and restricts its operation.

Nor was there any occasion for providing that the passway should extend to the "north line" of the lot deeded, if the provision was intended for the benefit merely of the grantee, as beyond the south line was on the land conveyed. The fact that "north" instead of "south" was used is strong and convincing evidence of the intention of the parties; and, in the absence of any evidence showing a mistake or misapprehension in this respect, it certainly is not to be presumed that any such existed. It would be doing violence to the plain import of the deed to assume that the parties intended directly contrary to its obvious meaning.

It is said that the clause in question, if a restriction, amounts to nothing because it is not in favor of any person or estate. I think it is not a restriction or reservation, but what is called, in law, an exception which must necessarily be in favor of the grantor who conveys and those who may claim under him. In *Ives* v. *Van Auken* (34 Barb., 567) the proper office of an exception in a deed, as distinguished from a reservation, is said to be to exempt from its operation "a part of that which is granted or comprised within its terms. It must be of such part as is severable from the rest." * * "The character of a reservation is always something issuing or coming out of the thing or property granted, and not a part of the thing itself; and, to be a good reservation, it must always be to the grantor or party executing it, and not to a stranger to the deed."

The right of way is included within the general bounda-

ries and is severable from the rest, and, therefore, comes within the definition in the case cited. It does not issue or come out of the property granted but stands alone by itself, and, therefore, is not a reservation. It is not, in any way, similar to a reservation of the privilege in a well, which issues out of the land, but rests upon a different principle. (See *Ives* v. *Van Auken, supra.*) In *Craig* v. *Wells* (11 N. Y. [1 Ker.], 315), which is relied upon by the defendant's counsel, it was held that a clause in a deed excepting and prohibiting the right of using waters of a mill site for certain purposes did not create a condition, exception or reservation; that it could not be construed as a covenant, limiting the use of the property, and was a mere prohibition of the use of the thing granted, and, as such, was void. The decision is placed upon the ground, in part at least, that the prohibition is inconsistent with the title conveyed by the deed. The case is not analogous to the one at bar; and the point decided does not affect the question now considered.

It is a general principle, applicable to the construction of all instruments, that whatever may be fairly implied from the terms or language of an instrument is, in judgment of law, contained in it. (*Rogers* v. *Kneeland*, 10 Wend., 218; *Hall* v. *Samson*, 19 How., 489.)

Applying this rule, it is obvious, I think, upon the face of the conveyance, that it was intended that the passway or lane which the grantee was entitled to use was to be kept open for the benefit of the grantee and his assigns.

The deed from Thomas Milner to De Forest, which conveys the lot lying immediately south of the land conveyed to Kershaw, after a grant of the land described by boundaries, contains the following language: " Also the use of a lane, twelve feet wide, from the green to the twelve feet above deeded, reserving the right to James Kershaw and his assigns to pass and repass across the said twelve feet in rear of the house, which is to be kept open as a passway."

This conveyance merely transfers the use of the land, subject to the right of Kershaw and his assigns to pass and repass, and declares that it shall be kept open as a passway; which means, I think, for the benefit of the grantor and his assigns, who are or may thereafter become interested.

It is claimed by the defendant's counsel that the two deeds should be construed together. The rule, no doubt, is that separate instruments, executed at the same time and relating to the same subject-matter, may be thus construed and taken as different parts of the same agreement. (*Hills v. Miller*, 3 Paige, 254; *Stow v. Tifft*, 15 John., 458.) But to authorize this to be done, the instruments must be between the same parties. (*Craig v. Wells*, 11 N. Y., 315.) As these two deeds were separate and distinct, and between different parties, there is no reason why they should be considered together as a part of the same transaction. Whether read and construed together or separately, I think, makes no difference; as the reasonable construction of both is that it was intended to keep open the passway for the benefit of all parties who were or who might thereafter become interested. The use of the passway alone was intended to be conveyed; but it was to remain open for the benefit of the other land which the grantee owned, as well as for the grantees in the several deeds.

*Second.* As to the plaintiff's right to the way by prescription, it appears that the plaintiff acquired title by deed on the fifth of November, 1845, to a parcel of land, with the privilege of using the lane in the rear, which was opened in 1842 or 1843 by Kershaw himself, and was used by plaintiff Milner and Kershaw until the defendant built over it in 1858 or 1859. The defendant agreed to pay and did pay rent to the plaintiff for his interest, by reason of closing the passage, from 1860 to 1864 inclusive; thus admitting plaintiff's right. As some of the testimony shows, he afterward agreed to open it if required to do so; and first denied the plaintiff's right in December, 1868, or January, 1869. Here was an uninterrupted adverse user of over twenty years,

Rexford *v.* Marquis.

which is held to confer a complete prescriptive title to a way or other easement, the extent of which is also to be exclusively governed by the user. (*Corning* v. *Gould*, 16 Wend., 534, 535; *Parker* v. *Foot*, 19 id., 309; *Miller* v. *Garlock*, 8 Barb., 153; *Townsend* v. *McDonald*, 12 N. Y., 381; *Flora* v. *Carbean*, 38 id., 111.) The plaintiff's claim, so far as this question is concerned, rests upon his deed, accompanied by acts asserting his right and the acquiescence of the defendant to the claim made. Under such a state of facts, it is not necessary to indulge in any presumption as to a grant, as it was actually in existence. The use of the way was evidence merely of its extent and character.

It is further insisted by the counsel for the defendant that even if there was a right of way in favor of the land lying north, yet, inasmuch as the plaintiff's office stands one-half upon other land besides that which he purchased of his grantor, the right of way does not extend to his office.

The doctrine is well settled that the owner of a right of way across one piece of land to another cannot use it to pass into an additional piece owned by him, and which lies adjacent to it. (*Howell* v. *King*, 1 Mod., 190, 191; *Colchester* v. *Roberts*, 4 M. & W., 769, 774; Wash. on Ease., 60, 185; *Shroeder* v. *Brenneman*, 23 Penn., 348; *French* v. *Marsten*, 24 N. H. [4 Hort.], 443.) Nor can the right of way be extended and enlarged, without the assent of the parties, beyond the purpose originally intended. (*Allan* v. *Gomme*, 11 Adol. & E., 759, 772, 774; 3 P. & D., 581; Wash. on Ease., 192.) The lot being in a village, it is a fair assumption, I think, that the right of way was intended to embrace any building which might be erected upon it. This construction was placed upon it by the acts and conduct of both the parties; for it had been used in that manner for upward of twenty years. While, then, the right of way was open to the plaintiff's lot, there was, I think, no authority to use it for the benefit of that portion of the lot which he purchased from another party.

In this respect the justice erred in refusing to find that the

Rexford *v.* Marquis.

plaintiff acquired no right of way, under the deeds given in evidence, to and in favor of the land which he purchased of the Bank of Chenango, and in refusing to find that the plaintiff acquired no such right by user. As, however, the judgment can be modified so as to confine the plaintiff's right to the land which he purchased of Thomas Milner, Jr., the error of the judge in these particulars is not fatal. The plaintiff is entitled to have the lane opened for this purpose; and if he uses it or attempts to do so beyond what he is entitled to the defendant can seek the proper redress.

The objection urged, that the case was one for a jury and not the court, is not well taken. Although the question as to the extent of the way and the manner of its use was proper for the determination of a jury, as well, perhaps, as the question of adverse possession, yet, as this was an equity cause, and the relief demanded purely of an equitable character, I think that the defendant was not entitled, as a matter of right, to a trial by jury. It was, therefore, a matter of discretion; and the exercise of this is not reviewable. (Code, §§ 253, 254; *McCarty* v. *Edwards*, 24 How., 236; *Cheseborough* v. *House*, 5 Duer, 125; *Wilson* v. *Forsyth*, 16 How., 448; *People* v. *A. & S. R. R. Co.*, 1 Lans., 319; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y., 46.)

The appeal by the plaintiff is not well taken, and I think the court was right in holding that the plaintiff was only entitled to a limited right of way, and such as was reasonably necessary and convenient for the purposes for which it was granted. (Wash. on Ease, 188; *Huson* v. *Young*, 4 Lans., 63; *Bakeman* v. *Talbot*, 31 N. Y., 366.)

There is no other objection urged which requires discussion. Neither party should have costs of this appeal.

The judgment of the court below should be modified in conformity with the suggestions made.

Ordered accordingly.