use.   The proposition may be summed up in the statement that the use of the premises as a highway and as a quarry are utterly inconsistent, and, the rights of the public being superior, the subordinate right of the owner must yield.

The evidence does not clearly show the cost of constructing the highway after the stone shall have been removed, but it would seem that common experience would indicate that such expense would be so great as to render the proposed reconstruction impracticable.   While it may be said that the bond may be of sufficient amount to accomplish the rebuilding of the road, yet, unless we are satisfied that it is practicable, we ought not to inconvenience the public, or put the town authorities to the hazard of being compelled to reconstruct the road and recover the cost many years hereafter from the defendant, or, perhaps, its bondsmen.

I think the judgment should be affirmed.

---

(101 App. Div. 566.)

### McCULLOUGH et al. v. BROAD EXCH. CO. et al.

(Supreme Court, Appellate Division, First Department.   February 24, 1905.)

1. EASEMENT—EXTINGUISHMENT.

   An easement created by deed is a valuable property right, and cannot be extinguished without compensation merely because of an unauthorized or excessive use.

   [Ed. Note.—For cases in point, see vol. 17, Cent. Dig. Easements, § 83.]

2. SAME—INJUNCTION.

   Where an easement permitted the use of an area and alley over the servient estate, the inclusion of the dominant estate in other real property, to which the use of the easement was not appurtenant, in the space on which one office building was erected, and constructed so that all of its parts were interdependent, and containing an opening into the area and alleyway, which was used by the tenants of those parts of the building which stood on land not entitled to the use of the easement, as well as the tenants occupying the dominant estate, entitled the owners of the servient estate to an injunction against the entire use of the easement until the building should be so altered as to permit the easement to be enjoyed by the dominant estate alone.

3. SAME.

   Where an easement permitting ingress to and egress from the dominant estate is appurtenant to part of the premises on which an office building is erected, and heated by a single plant located on the dominant estate, and placed so that the easement might be used in the hauling of coal to and removing of ashes from, the building, the owner of the easement is guilty of an excessive use thereof, in that he has no right to use it in generating heat to be transmitted to those portions of the building not erected on the dominant estate.

   O'Brien, J., dissenting.

Appeal from Special Term.

Action by John G. McCullough and another against the Broad Exchange Company and another.   From a judgment for plaintiffs, defendants appeal.   Modified.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Edward E. Sprague, for appellants.
Austen G. Fox, for respondents.

LAUGHLIN, J. The action is brought to obtain a decree forfeiting and extinguishing the easement of the defendant the Broad Exchange Company for ingress and egress through an alleyway from its premises formerly known as No. 52 Exchange Place, over an open area and plaintiffs' premises to Beaver street. The easement was granted in a partition deed bearing date the 20th day of June, 1879, which embraced premises Nos. 38, 40, 42, and 52 Exchange Place, Nos. 25, 27, and 29 William street, and 51 and 53 Beaver street, and the buildings and premises in the rear. The defendant the Broad Exchange Company has succeeded to the title to the premises No. 52 Exchange Place, and the building in the rear thereof, and the plaintiffs own the premises Nos. 51 and 53 Beaver street. The easement related to an irregular open area in the interior of the block inclosed by the premises partitioned, all of which abutted thereon, and to a covered alleyway 10 feet in width over the premises 51 Beaver street, connecting the open area with Beaver street. It was expressly covenanted "that for the mutual advantage of all the property" partitioned and conveyed the open area "shall be forever left as an open space, and shall be unencumbered by any erections, except such walks as now cross the same, for the purpose of giving light and air and ingress and egress from all the premises herein described; said open spaces as they now exist shall be maintained in good order and kept in good condition at the joint and equal expense of all the parties hereto"; and that the covenant should be held to be a covenant running with the land. The covenant with respect to the alley is that it "shall forever be left open, to the present height of the same, as a means of ingress and egress for the advantage of all the property hereinbefore conveyed and partitioned." It appears that at the time the partition deed was executed there were two low brick buildings on the premises known as No. 52 Exchange Place. The one fronting on the street covering the lot to the depth of 107 feet, and the one in the rear, being 34 feet in width, covering the lot within a few inches, and 116 feet in length. Both of these were office buildings. Prior to the commencement of the action the defendant the Broad Exchange Company became the owner of four lots, known as 44, 46, 48, and 50 Exchange Place, lying immediately to the east of its premises 52 Exchange Place, having an aggregate frontage of about 89 feet and 6 inches, and extending in depth 102 feet and 4 inches, and of several irregular lots adjoining 52 Exchange Place on the west, known as Nos. 54 and 56 Exchange Place, and 25, 27, 29, 31, and 33 Broad street, having an aggregate frontage on Exchange Place of about 124 feet and 9 inches, and of 106 feet and 8 inches on Broad street. None of these lots except said 52 Exchange Place was embraced in the partition deed, or had appurtenant to it any right or interest in the covenants or easements mentioned in the partition deed. These several lots together formed practically a parallelogram 236 feet long on Exchange Place, and 106 feet wide on Broad street, with the addition of the lot about 34 feet wide by 116 deep in the

rear of the center of the parallelogram; it being the lot in the rear of 52 Exchange Place, and entitled to the enjoyment of the easement in connection therewith, and, for brevity in the opinion, it will be deemed part of, and referred to as, 52 Exchange Place.

The Broad Exchange Company is a New Jersey corporation, and, after acquiring title to these lots, and about the 1st day of May, 1900, it caused plans to be prepared for the erection of a single office building thereon, 20 stories in height, with front entrances on Broad street and Exchange Place, and a door in the rear opening upon that part of the premises which was dominant to the easement upon the rear courtyard or open space referred to in the said partition deed. This building was designed for the accommodation of about 7,000 occupants, and was to have 18 passenger elevators, and a common heating and power plant for all. The building was constructed in accordance with the plans by the defendant George A. Fuller Company for the Broad Exchange Company, and prior to the trial of the action it was completed and opened for the reception and occupation of tenants. The boilers and machinery for heating the building and operating the elevators are in that part of the premises appurtenant to the easement, but the heat and power are distributed into those parts of the building beyond the lines of the original lot No. 52 Exchange Place, which alone was dominant to the easement. It is found by the court that the building was erected without regard to the lines of lot 52 Exchange Place, and that it was designed as one concrete structure, with connecting halls and stairways throughout, and with interdependent relations between its various parts. The office space in that part of the building standing upon the lot formerly known as 52 Exchange Place constitutes only one-fifth of the entire office space of the building. The average consumption of coal for the generation of heat and power in the building is between 20 and 23 tons per day. When the building was planned it was intended that the coal should be brought in through this alley, and across the open area, and transmitted to the furnace room through coal chutes, and this course has been taken. The ashes from the furnace were designed to be, and are, removed over the areaway and through the alley. Each of the 18 passenger elevators affords access to any part of the building, and 8 of them are entirely upon the original dominant lot, and 7 others are partly over it. The waste paper, sweepings, and refuse from the entire office building are deposited in bins near the door opening into the open area referred to, and removed via. the alley. Employés and tenants of all parts of the building may use the doorway opening upon the area at will for passing out to Beaver street, or to the building from Beaver street, and some of them avail themselves of the opportunity thus afforded for using the area and alley. The trial court has found that by thus constructing and using the office building the appellant owner has "so materially changed the condition of the original dominant tenement as to increase the burden of the servitude upon the subservient tenement of the plaintiffs, and to subject the servient tenement to the services of premises other than the premises originally dominant, and to render it impossible to separate the enjoyment of the original right from the enjoyment of the excess be-

yond the original right, and to make impossible the legitimate use of said easement." It has accordingly been decreed that the appellant owner has forfeited all its rights to the enjoyment of the easement, and that the same is forever forfeited and extinguished, and it is perpetually enjoined from using the same.

We find no definite evidence indicating that it would be feasible or practicable to alter the building in such manner that the tenants of that part of it which is constructed on the premises formerly known as 52 Exchange Place might be separated from the others, and, in the exercise of the lawful rights of the appellant owner, be permitted to use the alley and areaway for ingress and egress, or that the power plant and other use of which complaint is made might be likewise separated. However, it is not impossible to make this separation, and, if the owner wishes to do so, we see no reason why it should not be permitted. Moreover, the office building may be destroyed or otherwise demolished or removed at any time, and in that event it would seem that the owner should be permitted to enjoy the easement in connection with that part of his premises to which the easement was appurtenant. The erection of the building upon its own land was lawful, and does not work a forfeiture of the easement. Rexford v. Marquis, 7 Lans. 249–262; Greene v. Canny, 137 Mass. 64; Topling v. James, 13 C. B. N. S., 876. An unlawful or excessive use of an easement may be enjoined, but it is difficult to see upon what principle of law the court is authorized to declare it forever and altogether forfeited and extinguished because of an unauthorized or excessive use. It is a valuable property right, and we know of no authority for transferring its title, against the will of the owner, except by due process of law, involving just compensation.

It is also conceivable that an authorized and unauthorized use may be so intermingled as to justify enjoining any use until the circumstances have so changed that the authorized use may be permitted without affording opportunity for the unauthorized use which it would be difficult to discover or prove. If this be the rule, a situation is here presented justifying an injunction, not against the excessive use, but restraining any use until the building is so altered or changed that that part of it which is on the dominant tenement may enjoy the easement without permitting its enjoyment by the tenants and occupants of other parts of the building who have no right thereto. Where the nature and extent of the use of the easement is, as here, unrestricted, the use by the dominant tenement might, of course, be enlarged or changed. Allen v. Gomme, 11 Ad. & El. 759; Arnold v. Fee, 148 N. Y. 214, 42 N. E. 588; Gillespie v. Weinberg, 148 N. Y. 238, 42 N. E. 676; Dand v. Kingscote, 6 M. & W. 173; Sloom v. Holliday, 30 Law Times, 757. But the owner of the dominant tenement may not subject the servient tenement to servitude or use in connection with other premises to which the easement is not appurtenant. Williams v. James, Law Rep. 2 C. P. 577. It is manifest, therefore, that although the appellant, as owner of the dominant tenement, might have lawfully devoted it to a use that would have authorized and required a greater burden on this easement and right of way than has now been imposed, yet the tenants of those parts of the building not erected upon the premises No. 52 Exchange Place have no right to use the easement, and the owner has no right to

enlarge the use of the easement for the benefit of those parts of his office building which are upon premises other than the dominant tenement. This applies to the removal of ashes, sweepings, and refuse, as well as to bringing coal. It is not needful to inquire whether the owner of the dominant premises might establish thereon a plant for developing heat, light, or power, and transmitting the same to other premises for hire, and thus subject the right of way to a more extensive use than that to which it is now put. That might be a question of law, and it might be a question of fact, depending on the reasonableness of the use. Williams v. James, supra. The case is not analogous to the present situation. The coal and the heating power generated thereby are used directly for the benefit of the dominant tenement and adjacent premises of the appellant owner. It is no different in principle than if there were separate power plants, and the coal was passed over the dominant tenements for use on the other premises, which the appellant clearly would have no right to do. Skull v. Glenister, 16 C. B. (N. S.) 80; Davenport v. Lamson, 21 Pick. 72; Webster v. Bach, Freeman's Rep. 246; Lawton v. Ward, Ld. Raymond, 75.

It is to be borne in mind that this right of way and easement were acquired by deed, and the rule is that such an easement is not extinguished by nonuser, but only by grant or adverse possession. Smyles v. Hastings, 22 N. Y. 217; Welsh v. Taylor, 134 N. Y. 450, 31 N. E. 896, 18 L. R. A. 535; Parker v. City of St. Paul, 47 Minn. 317, 50 N. W. 247. Here there was no adverse possession, and nothing has been done with the intention of relinquishing the easement; but, on the contrary, it has been constantly enjoyed, and the complaint merely is of a use unauthorized in part. It was formerly held in England that the easement of "ancient lights" might be lost or suspended until the premises were restored to their original condition by enlarging or changing the position of the window, but it is doubtful whether that rule still prevails (Tapling v. Jones, 13 C. B. [N. S.] 876); and, moreover, it was never given place in our jurisprudence (Parker v. Foote, 19 Wend. 319), and would not be applicable to this case if it had. The appellant and those using the easement without authority would doubtless be liable to the plaintiffs in damages. Dennis v. Sipperly, 17 Hun, 69; Rexford v. Marquis, supra, 249, 262; Davenport v. Lamson, supra; Shroder v. Brenneman, 23 Pa. 348; French v. Marstin, 32 N. H. 316. But it is manifest that it would be next to impossible to show the damages or to enforce the rights of the plaintiffs under an injunction confining the use to the tenants of and those using the dominant tenement. Although equity abhors forfeitures, and will in a proper case relieve against their enforcement, it will not aid their enforcement even where it would interfere against the same at law. 1 Pomeroy's Eq. Jur. (2d Ed.) §§ 450, 459. Yet the appellant owner is responsible for the situation which enables its tenants and employés to use the easement, and render it impossible for the plaintiffs to know which have and which have not a right to such use. Therefore, while equity will not destroy the appellant owner's easement, it will grant the relief necessary to preserve the rights of the plaintiffs. It is manifest that these rights can only be effectively preserved by enjoining the appellant owner from using the easement while its premises remain in their present condition.

The appeal, in form, is by both defendants, but it is treated in the appellant's points as being by the Broad Exchange Company only; and no point is made that the injunction was unnecessary as against the Fuller Company, which has completed its contract.

The judgment should therefore be modified by striking out all provisions relating to a forfeiture of the easement, and modifying the injunction so as to enjoin and restrain the appellant owner, its officers, agents, and employés, from using the easement, and from furnishing occasion or extending, by implication or otherwise, any invitation to the tenants or persons having business with the tenants to use the easement, until such time as the building shall be so changed, altered, or arranged as to permit the enjoyment of the easement for the advantage of the dominant tenement only, with leave to the appellant owner to apply to the court, at the foot of the judgment, on notice to the plaintiffs or their successors in interest, when that time shall have arrived to vacate the injunction as to the dominant tenement, leaving the injunction, however, to stand permanently as to the remaining premises; and, as thus modified, the judgment should be affirmed, without costs of the appeal to either party. All concur, except O'BRIEN, J., who dissents.

O'BRIEN, J. (dissenting). This action involves the question as to whether an easement in and to an alleyway crossing plaintiffs' property has been extinguished by an excessive and unlawful use thereof by defendants. The easement was originally created by a partition deed dated June 20, 1879, which contained the covenant that a certain alleyway leading from Beaver street through the premises now owned by plaintiffs should "forever be left open to the present height of the same as a means of ingress and egress for the advantage of all the property hereinbefore conveyed and partitioned." At the time of the grant the portion of the partitioned premises which comprised the dominant estate was occupied by two brick buildings, not over four stories in height. Some time before the commencement of this action the defendant the Broad Exchange Company became the owner of the dominant estate, together with the old houses still remaining thereon; and it also acquired 11 adjoining lots, none of which had any easement, right of way, or interest whatsoever in the alley. It then removed the old buildings, and created an office building 20 stories in height, accommodating about 7,000 regular occupants, which building covered the entire plot, including the original dominant estate and also the adjoining nondominant lots. It is apparent that this building, as erected, was intended to be maintained as a permanent improvement upon the property, and was designed to be used as an entirety, without regard to the boundaries of the dominant and nondominant lots. In that portion of the structure which occupies the original dominant estate have been placed all the coal vaults, and the boilers in which the steam is generated that passes through pipes to all other parts of the building for the purpose of heating it. Here is also generated the power for lighting the building and running the elevators. This arrangement necessitates the use of the alley for the purpose of bringing all the coal for supplying the heat, power, and light for the entire building. The coal

amounts to about 20 tons a day, conveyed in two-horse trucks, of the average capacity of 4 tons each; and not only is the plaintiffs' property subjected to this additional burden, but the alley is also used by the defendant for the removal of the ashes caused by the consumption of the large amount of coal, and it is further used for removing the refuse and sweepings from the entire building, which are first deposited in the courtyard, and thereafter from time to time moved out through the alleyway; the average amount of the refuse so removed being about 14 two-horse truck loads a month, each truck load having a capacity of 4 tons. In addition to this, numerous employés and tenants of the building use the alley for the purpose of passing to and from Beaver street; access to the building from the alley being by means of a door leading to a corridor, which in turn leads to the main hall, and affords communication with the entire building. All of these facts were established practically without contradiction, and the plaintiffs claim that they show an unlawful and excessive use of the alley, which cannot be separated from its lawful use, and cannot be enjoined without also enjoining all use of it, for which reason whatever easement the defendant company might have had therein by reason of the grant of 1879 must be declared to be extinguished.

The issues were referred to a referee to hear and determine, who found that the defendant company had "unlawfully increased the burden of the servitude upon the said premises of the plaintiffs"; that it "had rendered it impossible to separate the use and enjoyment of the said easement as appurtenant to the said lot from the use and enjoyment thereof by the adjoining premises which have no right or interest therein or thereto, and has thereby forever forfeited, extinguished, and altogether destroyed the said easement as to said lot"; and that the plaintiffs are entitled to a judgment to that effect, and also perpetually enjoining and restraining the defendants, their agents, servants, etc., from using said alleyway for the purpose of ingress to or egress from the new building. From the judgment entered in conformity with the referee's report, the defendants have appealed. For the reasons stated in the two opinions of the learned referee, I am of the opinion that this judgment is right.

There can be no doubt, from the uncontradicted evidence, and as found by the referee, that defendants by their acts have attempted to impose a burden upon the servient estate far in excess of that which was legally contemplated or provided for by the grant. It may be admitted that the defendants, as owners of the dominant lots, had the right to change the characters of the buildings upon that property from what they were when the easement was created, and to use the alley for egress and ingress to whatever structure they might thereafter erect upon that dominant estate. Arnold v. Fee, 148 N. Y. 214, 42 N. E. 588. But they have done more than this. They have taken a tract of land to which the plaintiffs' premises were not servient, and upon this tract, as well as upon the dominant estate, they have erected an immense office building, and they are using the alley for the purpose of furnishing access to that entire building in the manner already pointed out. By this conduct they have subjected the plaintiffs' premises to the burden not only of the original dominant estate, but also

of the large additional tract of land, with the buildings thereon. This the defendants could not lawfully do. In Rexford v. Marquis, 7 Lans. 249, the conveyance of land with a public house thereon included the use of a lane through the grantor's premises for the purpose of passing to and from the rear of the public house, and the court held that the grantee of a right of way to one piece of land could not make use of it to pass into another and adjacent piece. It was there said:

"The doctrine is well settled that the owner of a right of way across one piece of land to another cannot use it to pass onto an additional piece owned by him, and which lies adjacent to it. Howell v. King, 1 Mod. 190, 191; Colchester v. Roberts, 4 M. & W. 769–774; Wash. on Ease. 60–185; Shroder v. Brenneman, 23 Pa. 348; French v. Marstin, 24 N. H. 440, 57 Am. Dec. 294. Nor can the right of way be extended and enlarged, without the assent of the parties, beyond the purpose originally intended. Allen v. Gomme, 11 Adol. & Ellis, 759, 772, 774; 3 P. & D. 581; Wash. on Ease. 192."

In Jamison v. McCredy, 5 Watts & S. 129, two tenants in common constructed a canal through their property, and thereafter divided the estate; each reserving the common use of the canal for the benefit of himself, his heirs, assigns, and tenants, and each covenanting that he would not use the water or water power otherwise than upon his respective lot. In considering the easement created by this deed, the court held that one party had not the right to bring coal over the canal for the purpose of depositing it upon his lot, and then taking it to an adjoining lot, to be used in a steam mill. In Greene v. Canny, 137 Mass. 64, it is said, "When intended to give access only to particular premises, the [private ways] cannot be used to reach thereby other lands." In Abbott v. Butler, 59 N. H. 317, the court, in construing a grant of way "to and from B. & C.'s land," said: "Had the way been reserved for the benefit of that land, the defendant could not use the way to accommodate some other tract adjoining or lying beyond." In Smith v. Porter, 10 Gray, 66, the court construed a grant of "liberty to pass and repass over my land where it is necessary," and held that such a grant conferred "a right of way to and from those lands only which the grantee owns at the date of the deed." The court there said: "It is not pretended, nor could that position have been maintained if it had been assumed, that this servitude extended to, or could have been availed of by the grantee in connection with, any other lands to which he might subsequently have acquired a title." In Springer v. McIntire, 9 W. Va. 196, the owner of a right of way to a lot extended the way through that lot to one adjoining; and the court held that the defendant could not "claim the right to increase this burden or charge upon these servient lots or subdivisions which was made for the benefit of one, so as to increase them by serving another lot or subdivision. In this proposition there is a concurrence and agreement in authorities to a uniformity that is seldom met with in difficult legal questions."

The law being thus clearly defined upon this point, and it appearing without dispute that the defendants have made the plaintiffs' estate subservient to a tract of land other than the dominant estate, we are confronted with the necessity of determining the remedy that should be granted to the plaintiffs for the wrong which they have been made to suffer through the defendants' misconduct. The rule governing such

a situation is stated in Reeves on Real Property, § 195, to be now established, both in England and in this country, so far as the question has arisen here, as follows:

"If that which is wrongfully and excessively claimed or enjoyed can be distinguished from that which is rightfully owned, this will be done, and only the excessive amount will be taken away and prohibited. When, however, such separation and distinction cannot be made, the prohibition of the excessive claim results in the destruction, also, of the entire original right."

This principle is also confirmed in Washburn on Real Property, § 1270, where it is said:

"If one who has an easement for one purpose—such as a footway, for instance—use it for another, as for carriages, it will not give a right to the owner of the servient estate to stop the use altogether, so as to deprive the former of his footway, for the rightful use in such cases may be separated from that which is wrong. But if the owner of the dominant estate extend his easement in another's land beyond what he has a right to enjoy, and does it in such a way that the owner of the servient estate cannot stop the excessive use without stopping the use altogether, the latter may lawfully do so."

I have been unable to find any adjudication in this country where the courts in applying this rule have extinguished an easement because of an excessive and unlawful user which could not be separated from a lawful user; and the English cases in which this remedy has been applied are those where the owner of a house had acquired by prescription an easement of light and air through ancient windows, and where by altering and enlarging such windows the courts declared that he had extinguished the original easement. In Renshaw v. Bean, 18 Adol. & El. (N. S.) 111, the plaintiff, being the owner of a house with ancient windows, rebuilt it, added an upper story, opened windows in that story, enlarged the ancient windows, and otherwise altered their position. The defendant subsequently rebuilt his premises, thereby darkening the windows in both the upper and lower stories of plaintiff's house; and it was held that as plaintiff, by his own alterations, exceeded the limits of his right, and it being, through the nature of such alterations, impossible for the defendant, in the lawful exercise of his own lots, to obstruct such excess without at the same time obstructing the plaintiff's former right, the plaintiff must be considered as losing his former right, at all events until he restored his house to its original condition. In Hutchinson v. Copestake, Com. Bench Rep. (N. S.) 863, the court said—

"That where windows to which a right has been acquired are so far altered in their position and size, and confused with portions of new windows, that the owner of the servient tenement cannot prevent a right being gained to the new windows without obstructing such portions of the old windows as have been mixed up with the new lights, no right of action arises from such necessary obstruction of the remaining portions of the old windows."

In Heath v. Bucknow, L. R. Equity Cases, 1, the court pointed out the growth of the law upon this subject in England, and approved the following rule:

"Where a house having ancient lights is burned or pulled down and rebuilt, and the question arises whether the character of the ancient lights which belonged to the windows of the old house attaches to those of the new house, it appears to me that the principle to be applied to the solution of the question

is to inquire whether the new windows would impose on the servient tenement either an additional servitude to that to which it was subjected when the old house existed, or a different servitude from that which previously existed. * * * To deprive them of that character [ancient lights], the change must be material, either in nature or quantum of the servitude imposed."

The same principle which in these cases is applied to an easement of light and air must also govern the easement of access to certain property over the land of another, and the decisions cited, it seems to me, are clearly authority for holding that the present easement has been extinguished by the excessive and unlawful use made of it by the defendants. There can be no difference in this respect between an easement acquired by prescription or user and one acquired by grant. An easement by prescription is merely one by an implied grant. The intention of the parties as to its nature and extent is to be determined by their use of the servient and dominant estates. Here the easement is not by an implied grant, but by an actual one, and its scope must be determined by the intention of the parties, as expressed in the grant itself. That grant which created the easement limited it "for the advantage of all the property hereinbefore conveyed and apportioned." It restricted the use of the alley to such purposes as might be required for the benefit of that property alone. Having determined, therefore, the intent of the parties and the extent of the easement, it is governed by the rules above stated, irrespective of whether it was acquired by prescription or by grant. In Allen v. Gomme, 11 Adol. & El. 400, and in Henning v. Burnet, 8 Exchequer Rep. 187, rights of way created by grant were treated the same as those which had been acquired by prescription; the former case holding that the defendant, who had a right of way by grant to a stable, etc., was not entitled to use that way for the purpose of passing to a newly erected cottage on the lot. In Allen v. San Jose Land & Water Co., 28 Pac. 215, 15 L. R. A. 93, the California court cited with approval the English rule in a case where the plaintiff was the owner of a servient estate, the easement consisting of a ditch filled with water flowing across his land. The defendants attempted to place a pipe line across the land in place of a ditch, whereupon the plaintiff brought an action to restrain such a change, and the court said:

"Will the terms of a grant for an open ditch of water be satisfied by laying an underground pipe line? We are clearly satisfied to the contrary, and that such a course, if continued, would result in the extinction of the easement, and the creation of a servitude upon the plaintiff's land, differing in kind from the one previously existing there."

Also, see note, 15 L. R. A. 93.

From these authorities we think it is established that the plaintiff is entitled to the judgment which has been rendered in his favor. As already pointed out, there is an excessive and unlawful use of the alley, and it is impossible to separate the burden imposed upon the servient estate by the portion of the building on the dominant lots from the burden imposed by that portion standing upon the nondominant lots. The structure which occupies the entire plot was designed and intended to be used as an entirety. Its use cannot be separated so as to conform a part of it to the boundaries of the original dominant estate. The coal used for the heating of one part cannot be separate from that used

for the heating of another part. There can be no arrangement made by which tenants of one part can be prevented from using a certain doorway which the tenants of another part are permitted to use. In other words, the excessive use is inseparable from the lawful use of this easement, and it cannot be enjoined without at the same time restraining its lawful use. Therefore the original easement itself is extinguished. It is true, this decision works a hardship upon the defendants, but it must be remembered that such hardship is caused by their own wrongful acts; and to deny the plaintiffs the relief to which they are entitled would cause equally a hardship to them, which they should not be called upon to bear, as they are innocent parties.

For these reasons, I think judgment declaring the easement extinguished, and restraining defendants from using the alley, should be affirmed.