## MORSE v. SWANSON et al.

(Supreme Court, Appellate Division, Fourth Department.　January 13, 1909.)

1. EASEMENTS (§ 17*)—RIGHT OF PASSAGEWAY—COMMONS.

　　In laying out lots for summer homes adjacent to a point on a lake, streets, avenues, parks, and commons were platted, including a triangular piece which constituted a part of the point and of the common next to the water, its westerly boundary being the division line between the point and defendant's adjoining property. Held, that defendants having

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

also acquired land on the point, as owners thereof also acquired an ease-ment over the triangular piece conveyed to plaintiff for passage to and from their land on the point to their lands west of the triangular piece.

[Ed. Note.—For other cases, see Easements, Dec. Dig. § 17.*]

2. BOUNDARIES (§ 15*)—INLAND LAKES—SHORE OWNERS.
A grantee of upland extending to an inland lake acquired title to low-water mark.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. § 112; Dec. Dig. § 15.*]

3. EASEMENTS (§ 60*)—USE—OBSTRUCTION.
Where defendants were entitled to use a triangular piece of land ad-joining a lake as a common, the fence erected along the boundary of the land was properly removed.

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 129; Dec. Dig. § 60.*]

4. NAVIGABLE WATERS (§ 36*)—RIGHTS OF SHORE OWNERS—FILLING.
Under the rule that the owner of land bordering a lake may occupy the land between high and low water mark so far ·as adjoining owners are concerned, he may fill such space, if he does not thereby substantially injure his adjoining proprietors.

[Ed. Note.—For other cases, see Navigable Waters, Dec. Dig. § 36.*]

5. WATERS AND WATER COURSES (§ 119*)—DRAINAGE—ADJOINING LANDOWN-ERS.
An adjoining owner may not drain his land and take water from his cottage and conduct it across the land of his neighbors without their consent.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 131; Dec. Dig. § 119.*]

Spring and Kruse, JJ., dissenting.

Appeal from Trial Term, Chautauqua County.

Action by Charles E. Morse against Charles A. Swanson and others. From a judgment for plaintiff on a referee's report, defendants ap-peal. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Fowler & Weeks and Green & Woodbury, for appellants.
Pickard & Dean and F. W. Stevens, for respondent.

WILLIAMS, J. The judgment should be reversed so far as ap-pealed from, and a new trial granted, with costs to the appellants to abide event.

The action was brought to determine the rights of the parties with respect to their properties upon and adjacent to Point Stockholm (so called), upon Chautauqua Lake, in Chautauqua county. It is an equity action, and by the judgment affirmative relief was granted to the defendants against the plaintiff. The plaintiff has not appealed, but has acquiesced in the judgment, so far as it is against him. Equi-table relief was granted to plaintiff against defendants, and from the provisions affording such relief this appeal is taken.

In the year of 1887, Soderholm and Peterson owned a tract of land, bounded upon two sides by the lake, and they plotted and subdivided it into lots, streets, avenues, parks, and commons. They made a

map of the property and filed it in the county clerk's office, and the property was designated as "Soderholm's and Peterson's Allotment to Point Stockholm, on Chautauqua Lake." The lots were more or less of them sold to parties who erected cottages thereon and occupied the same during the summer months. In 1889 Peterson sold his one-half interest in the property to Soderholm. April 3, 1889, the plaintiff received a deed from Soderholm of lots 1, 2, 3, 4, 5, B & C, upon the point, and June 3, 1901, he also received a deed for another lot known as the "triangular piece." The plaintiff also acquired title to a strip of land adjoining Point Stockholm, 33 feet wide. Six years after Point Stockholm had been laid out, the defendants Swanson, Valien, and Hultquist acquired title to lands lying northwesterly of and adjacent to the point, which up to October, 1893, had been unused and uncultivated. The said defendants built cottages upon these lands, and occupied them as summer resorts. The defendants Rapp and Bergwall purchased lots on the point, and constructed cottages thereon. All the defendants owned cottages on their lands west of the point except Abrahamson. His only cottage was on the point. November 7, 1902, the defendant Abrahamson deeded to defendants Swanson, Valien, Bergwall, Hultquist, and Rapp lot No. 8, on the point. In the fall of 1903 the plaintiff built a wire fence on the line between the 33 foot strip and the triangular piece owned by him and the property westerly, owned by the defendants, down to low-water mark on the lake, so as to prevent the defendants from passing over the triangular piece to and from the point. The defendants Swanson and Abrahamson removed the southerly portion of this fence so as to permit teams and foot passengers to pass between the point and the defendants' premises to the west over the triangular piece. The plaintiff, by his deed of the triangular piece, acquired title to the low-water mark on the lake. At that time the water came up to the triangular piece. In July, 1903, when the water was low, Swanson and Valien and the other defendants, except Abrahamson, made a fill in front of their premises on the shore. They drove rows of piles, and put on planking, and filled in with gravel and stone, in order to extend their lawns. The line where the fence was built is not at right angles with the shore, but if extended, would be for some distance parallel with the shore, include the bay north of the point, and intersect the point itself. The fill was made by the defendants upon the theory that they could extend this line into the lake to low-water mark, and all the land west of it could be used and occupied by them. At the time the plaintiff purchased his premises on Point Stockholm, a natural water course extended from a swamp above down across the 33-foot strip and the defendant Swanson's land west of the point into the lake. It was a live one, always running. After plaintiff purchased his premises he drilled an artesian well on the 33-foot strip, and the surplus water which flows the year around runs off in the water course, and all the waste water from plaintiff's house runs through a wooden culvert into this water course. This statement of facts gives a general idea of the conditions surrounding the property of the parties.

First. The referee held that the defendants had no right to cross

over the westerly line of the triangular piece between the point and their property to the west, on foot or with teams, and by the judgment they were restrained from so doing. The finding and judgment related also to the 33-foot strip. That piece was no part of the point. We do not understand it to be claimed that the defendants had any easement in or right to enter upon or cross that piece. The triangular piece, however, was a part of 'the point and of the commons, and by this deed the plaintiff acquired the title thereto, subject to the easement which attached to the other commons on the point. The defendants were all owners of property on the point, and by their deeds acquired the easements common to all lot owners thereon. Among these was the right to use the commons, and, as a part thereof, the triangular piece, for any and all proper purposes. To this extent the parties are agreed. The disagreement is as to what was a proper use of this part of the commons. By the language of the grants to the defendants they were given a right to use, in common with all other owners, the streets, avenues, parks, and commons, but no right to use them for any other purpose than such as was usually allowed on streets, avenues, parks, and commons. The grant is no more specific as to the use that might be made of the public parts of the point.

The referee, upon the request of the defendants, has found:

(7) "That one of the uses to which the persons who plotted and laid out Point Stockholm devoted said commons and parks, and for which they themselves used the same, was that of passing to and from lands adjoining Point Stockholm."

(8) "That such use has been continued by owners of lands upon Point Stockholm to the present time."

(9) "That the plaintiff in this action has used the parks and commons for the purpose of passing upon the 33-foot strip adjoining the point, of passing onto the lands owned by these defendants west of said premises, in passing to the lands adjoining known as 'Sheldon Hall,' southeast of said premises."

(10) "That it has been customary for the parties who plotted Point Stockholm, and for the grantees, to pass over the parks and commons for the purpose of visiting the defendants, and that many of the owners of lots upon Point Stockholm have invited these defendants to visit their homes from time to time, and it has been customary for these defendants to visit their homes from time to time, and it has been customary for these defendants to travel over the parks and commons for the purpose of doing so."

(11) "That the owners of lands on Point Stockholm have from time to time, as occasion demanded, used the parks and commons, or portions thereof, for driving upon with various kinds of vehicles."

It would seem, therefore, that the understanding of the parties was that the commons might be used by the owners of lots thereon for going on and off the point. This triangular piece was common, was down next the water, and its westerly boundary was the division line between the point and the defendants' adjoining property. The defendants by express grant in their deeds of property on the point had the legal right to enter and be upon this piece of land as a part of the commons, and to be at the boundary line of the point. What their purpose or design in so doing might be was unimportant. They were under no obligations to have any intentions at all in going upon the commons. What was in their minds could not affect the legality of their entrance upon any part of the commons. Can it be that,

while being legally upon the triangular piece by the boundary line, the stepping over that boundary line upon the adjoining property or from such adjoining property to the commons would be illegal, and should be restrained, by the judgment of the court? This is practically what has been done in this case. The restraint is against going over the boundary line. So far, if at all, as the restraint is from going upon or across the triangular piece, it could not be sustained at all, and apparently the only restraint intended to be imposed was the crossing of the boundary line, the one way or the other. Whether such crossing was on foot or with vehicles could make no difference. The decision was not placed upon any improper use of this part of the common by the use of vehicles, as distinguished from travel on foot. The defendants had a right to go on and off the point, and to use the streets, avenues, parks, and commons for the purpose of such entry and exit. We find nothing in the conveyance requiring them to use any particular way in going on and off the point. If there was a highway adjoining the point, they could pass over any street, avenue, park, or commons to reach such highway. They would have no right to go to and from the point over the lands of others in which they had no interest, for instance, the 33-foot strip of the plaintiff; but we see no reason why they should not pass over a common of the point to their own lands immediately adjoining, with only a boundary line between them, and the referee has found as matter of fact that the parties all used this triangular piece, being a part of the commons, in going to and from defendants' property.

The counsel for plaintiff dresses the question in very formidable language. He says it is whether the right of the defendants to use the rights and easements appurtenant to their property lot No. 8, on the point gives them the right to use the streets, avenues, parks, and commons in going to and from their cottages upon the adjoining lands not a part of the point, and he argues that a dominant tenement may not subject the servient tenement to the servitude or use in connection with other premises to which the easement is not appurtenant, and that really the defendants are subjecting the plaintiff's property in the triangular piece to an easement not in favor of lot No. 8 on the point, but to an easement in favor of their property to the west of the point. We do not so understand the question. We regard the judgment as improper, in so far as it adjudges the act of crossing this boundary line in question as illegal, and restrains the same.

Second. The foregoing considerations lead to the conclusion that the fence along the triangular piece was improperly constructed, and that its removal by the defendants was not illegal, and, so far as the judgment finds such act illegal and restrains the interference with such fence, it was erroneous and should not be sustained.

Third. We are unable to see why the filling by defendants in front of their lots was not legally done. It was all above low-water mark. It was a great improvement to the lots. It could do no substantial damage to the triangular piece, which was a part of the common, and upon which nothing could be constructed by plaintiff, the owner of the fee. It was all upon the defendants' own side of the division line.

They ought not to be compelled to remove the filling unless it is necessary to protect the plaintiff's actual, substantial rights. Without attempting to determine the rights of the parties if a filling had been made below the low-water mark, or for any considerable distance below high-water mark, which might perhaps have been done, considering the conformation of the shore at this point of the lake, we think there was no ground for holding the filling actually made was illegal, and compelling the removal thereof. The ordinary rule is that the owner of land bordering a lake has the legal right to occupy the land between high and low water mark, so far as adjoining owners are concerned. There can be no doubt of this in cases where the division line between the lot owners is perpendicular to the shore line.

It seems to be claimed here by the respondent that the rule is different where the division line strikes the shore line obliquely, and that the owners are then entitled to have the water perpendicularly in front of them to low-water mark unobstructed, regardless of the ownership of the land itself under water. We are not willing to concede this latter rule, while admitting that conditions might exist as to the conformation of the shore that would complicate the question considerably. So far as the conditions exist here, we see no reason why the general rule should not control.

Fourth. The fill on the triangular piece did not amount to much —was an improvement rather than an injury to any one. It was to fill up a washout, and could hardly be regarded as a trespass which called for a restraining clause in the judgment.

Fifth. It is difficult to see what right the plaintiff has to drain his lands and take water from his cottage and conduct it across the defendants' property without their consent. The plaintiff claims it did not amount to much, and did little if any damage, and this may be true the same as to the filling on the triangular piece above referred to.

We have thus considered the various questions raised by the parties, and we conclude that the judgment, so far as appealed from, should be reversed, and a new trial granted, with costs to the appellant to abide event.

McLENNAN, P. J., and ROBSON, J., concur.

SPRING, J. (dissenting). All the defendants, except Abrahamson, owned lots adjacent on the west to Point Stockholm. They originally owned no lands on the Point Stockholm tract, and consequently had no right to use the commons and parks of that tract. The plaintiff owned several lots, and an inclosed triangular piece extending down to the lake, and which comprised a part of the tract referred to. These adjacent owners were accustomed to cross over this three-cornered piece, which evidently caused trouble. The defendant Abrahamson owned three lots on the Point Stockholm tract; one, No. 8, a vacant lot 52×80 feet, and fronting on Willow avenue, an opened street. In 1902, and long after this tract had been plotted and mapped and buildings erected on it, Abrahamson conveyed this vacant lot to the other defendants as tenants in common. The purpose of this conveyance

114 N.Y.S.—56

was apparently to enable these defendants, who were not owners on this tract, to reach their lots more conveniently.

This use was not reasonably appurtenant to this vacant lot or to the premises as a whole, and subjected them to an additional burden without the consent of the plaintiff. I think by this purchase they did not acquire any right to pass over plaintiff's triangular piece or the parks and commons in going to and from their adjoining premises. McCullough v. Board Exchange Co., 101 App. Div. 566, 92 N. Y. Supp. 533, affirmed 184 N. Y. 592, 77 N. E. 1191; Rexford v. Marquis, 7 Lans. 249. In the latter case the court states the rule, at page 262, as follows:

"The doctrine is well settled that the owner of a right of way across one piece of land to another cannot use it to pass into an additional piece owned by him, and which lies adjacent to it. * * * Nor can the right of way be extended and enlarged, without the assent of the parties, beyond the purpose originally intended."

It may be that the judgment should be modified by relieving the defendants from the burden of removing the planking and piles in front of the plaintiff's premises. However, as a majority of the court are in favor of a new trial, I dissent, and vote for affirmance.

KRUSE, J., concurs.