Huson *v.* Young.

---

CHARLES M. HUSON *v.* SEBASTIAN YOUNG.

(GENERAL TERM, FOURTH DEPARTMENT, JANUARY 7, 1871.)

The extent to which the owner of land may interfere with the use of a private way, to which it is subject, by gates or bars, depends upon the purposes for which the way is used, and the necessity for their erection to protect his property.

In the case of a way over agricultural land, for the benefit of owners of the same description of lands, the fair criterion of extent of obstruction is, whether the owner of the servient estate, having no interest to embarrass his own user of it, would, for the protection of his other property, be likely to erect such obstructions.

In every case, the question is for the jury.

The owner of an easement by reservation has no greater rights under it than he would have if acquired by grant, and is limited to such use of it as is reasonably necessary to its enjoyment.

THIS was an action in the nature of trespass, for alleged obstructions, by bars, to the plaintiff's right of way over the defendant's lands, situated in the town of Starkey, in Yates county.

It appeared that one Lanning was, in 1850, the owner of certain lands in Starkey, extending from the Eddytown highway, on the west, to the western shore of Seneca lake, on the east; and, in November of that year, he, together with his wife, conveyed a strip, running north and south through the premises, to the Canandaigua and Corning Railroad Company, and, in 1854, being still owner of the residue, conveyed the lands lying west of the railroad to one Palmer, reserving " the right to pass and repass, with his carriages, wagons, cattle and other animals," from the Eddytown highway to the grantor's lands east of the railroad. The plaintiff's title was derived from Palmer, through several successive conveyances reserving in each case the right of way, as reserved in Lanning's deed.

It also appeared that Lanning had conveyed, in 1855, together with his wife, the portion of his original tract which lay east of the railroad, with right of way according to the reservation in the deed to Palmer, and that the defendant held by mean conveyances of the same premises and right of way. The material facts are stated in the opinion.

The case was tried before the court and a jury, and the plaintiff had a verdict declaring that the defendant had trespassed upon the plaintiff outside of the right of way, for which the plaintiff was entitled to one dollar damages; but the jury found that there was a right of way in the defend-

ant, and gave no damages for its obstruction. The plaintiff moved for a new trial, on exceptions ordered to be heard in the first instance at General Term.

*D. J. Sunderlin*, for the plaintiff.

*Wolcott & Spicer*, for the defendant.

Present—MULLIN, P. J., JOHNSON and TALCOTT, JJ.

By the Court—MULLIN, P. J. This action was brought to recover, amongst other things, damages for cutting down a bar post belonging to a pair of bars erected across a right of way which the defendant had over the plaintiff's land, in the town of Starkey, in the county of Yates.

The right of way was established on the trial. It was proved that bars had stood at the place where the post cut down by the defendant was standing, for quite a number of years, but they were permitted to go to decay once at least, when others were erected in their place.

The court charged the jury that the bars were an obstruction to defendant's right of way, and he had the right to remove them. This part of the charge was excepted to by plaintiff's counsel. This exception presents the only question of any importance arising on the motion for a new trial.

The learned judge erred in his instructions to the jury. The plaintiff had the right to erect and maintain a gate across the way, so that it did not unnecessarily interfere with defendant's use of it.

This precise point was decided in *Bakeman* v. *Talbot* (31 N. Y., 366). In that case the land had been partitioned amongst heirs, and a right of way over one of the shares was allotted to the owners of the shares of others of the heirs. The shares to which the way was apportioned was wood land, and the pieces adjoined each other so that they could all enter a common way along the north line of the servient tenement, and thus reach the highway. The owner of the land

over which the way was laid out put up bars across the way where the lines of his lot crossed the way, so that plaintiff was obliged to let down the bars whenever he desired to pass from his lot to the highway. The action was an equitable one to establish plaintiff's right to a way over the defendant's land; and it was held, that the erection and maintenance of the gates were not such an obstruction as the plaintiff was entitled to have removed.

The extent to which the owner of land over which a way is laid may interfere with the use, by gates or bars, depends upon the purposes for which the way is used, and the necessity of such erection for the protection of the property of the owner of the land.

When the way is over agricultural lands, for the benefit of the owner of the same description of land, the fair criterion of the extent to which the owner of the land over which the way lies to obstruct it is, whether such owner, having no interest to embarrass his own user of such a way, would, for the protection of his other property, be likely to erect such obstructions.

The question is, in every case, for a jury, and should be submitted to them.

The right of the owner of the land over which a way is laid to obstruct it in the manner and to the extent mentioned above, is asserted in Washburn on Easements, 216. He says, when one grants a right of way across his land, he may shut the termini by gates, which the grantee must open and close when using the same, unless an open way is expressly granted. Again, at 195, the author says: "In addition to what is said of the right to maintain fences across a way by the land owner, it seems to be now settled that, if the land owner is not restrained by the terms of the grant of a right of way across his land for agricultural purposes, he may maintain fences across such way, if provided with suitable bars or gates for the convenience of the owner of the way. He is not obliged to have it as an open way, nor to provide swinging gates, if a reasonably convenient mode of passage is fur-

nished." (See, also, *Brace* v. *Coleman*, 44 N. H., 539 ; *Max-well* v. *McAtee*, 9 B. Monr., 20 ; *Cowling* v. *Higginson*, 4 M. & W., 245.)

It seems by the case that there were gates at the termini of the way, that is, at the railroad at one end, and at the Eddington road at the other. Whether an intermediate gate or pair of bars were necessary for the protection of the plaintiff, we do not know. Bars had been kept there the greater part of the time after the way was laid out, and this is some evidence of their necessity.

But, if the defendant thought them unnecessary, he should have gone to the jury with the question, in order that they might pass upon it, and their verdict against the necessity of them would have been conclusive.

The court, by refusing to allow the question to go to the jury, has deprived the plaintiff of the right to have a finding by the jury on the question.

The cases to which I have referred are cases in which the owner of the right of way acquired it by grant ; the defendant obtained his by a reservation of the right in his deed.

The owner of an easement by reservation has no greater rights under it than he would have if acquired by grant. (Washburn, 51.) In both he is limited to such use of it as is reasonably necessary to its enjoyment.

Motion for a new trial granted, costs to abide the event.