MARIA ANNE CHENEVERT AND MATHILDE BOULAIS *vs* ALGONDUS LARAME.

JANUARY 16, 1920.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, Stearns, and Rathbun, JJ.

*(1)   Easements.   Right of Way by Necessity.   Increasing Burden.*

One having a right of way by necessity over land of his grantor to a highway cannot use such right of way for the purpose of ingress and egress to other land acquired from another grantor, but contiguous to the first parcel, as such use increases the burden beyond the servitude lawfully created.

*(2)   Easements.   Right of Way.   Obstructing Way.*

Where one has a right of way by necessity over land of his grantor to a highway, the placing of a gate of light construction easily opened on the end of the way at the highway, by the owner of the fee, is not an unlawful interference with the use of the way.

*(3)   Easements.   Right of Way.   Directing Verdict.   Obstructing Way.*

Where there was no evidence that a gate was an unreasonable obstruction to the use of a right of way it was not error to direct a verdict for the owner of the servient tenement.

TRESPASS QUARE CLAUSUM. Heard on exception of defendant and overruled.

PARKHURST, C. J.   This is an action in trespass *quare clausum* and is brought by Maria Anne Chenevert and Mathilde Boulais, both of the town of West Warwick, against Algondus Larame, also of West Warwick, the writ being dated May 1st, A. D. 1917. The land is situate in what is now the town of West Warwick, formerly Warwick, at Arctic Centre.

The declaration is in two counts. The first count alleges that the defendant entered the close of the plaintiffs and

tore down a gate. The second count alleges that the defendant entered the close of the plaintiffs and trampled down and walked upon the herbage and committed other wrongs of a like nature.

The defendant pleaded (1) the general issue, (2) unobstructed right of way by prescription, (3) unobstructed right of way by necessity. The plaintiffs traversed these pleas and issue was joined.

The case came on for trial in the Superior Court before Mr. Justice DORAN and a jury at East Greenwich, June 28, July 2 and July 3, 1918, and resulted in a disagreement. It was again tried on February 7 and February 10, 1919, before Mr. Justice SWEENEY and a jury. At the conclusion of testimony, and upon motion of the plaintiffs, the court directed a verdict for the plaintiffs with damages assessed in the sum of one dollar.

The case is here on the exceptions of the defendant to the ruling of the court directing a verdict for the plaintiffs.

The essential facts appearing in evidence are as follows: On November 18, 1893, John B. Archambault, the common ancestor in title of the parties, conveyed to Algondus Larame, the defendant, a parcel of land in Warwick, R. I., being the southwest corner of lot No. 30 on a plat of house-lots made and surveyed by G. T. Lamphear for A. K. Barnes. The grantor owned in addition to lot No. 30, lots Nos. 28 and 29 on said plat, and the parcel conveyed to the defendant was bounded southerly and westerly by land of other owners and northerly and easterly by land of the grantor, John B. Archambault, who at that time owned and occupied the cottage now owned and occupied by these plaintiffs, the lot on which it stands bounding easterly on McNiff Street. No reference was made in the deed from John B. Archambault to the defendant concerning a right of way from said parcel of land, the cottage lot so-called, to a street. There was a cottage house on the land purchased by the defendant and when he moved into it and occupied it he gained access to McNiff Street by passing over land of

John B. Archambault on a path about nine feet wide north of the northerly side of the house occupied then by Mr. John B. Archambault, the grantor, and now by these plaintiffs. At the time that John B. Archambault conveyed the cottage lot to the defendant, November 17, 1893, there was no way for the defendant to reach McNiff Street, or any other public highway, except over land of John B. Archambault.

On September 2, 1896, John B. Archambault conveyed to Alphonse Archambault that portion of lot No. 30, which is now plaintiffs' land, bounded easterly on McNiff Street, northerly by land of John B. Archambault and westerly by the cottage lot, so-called, of the defendant. In the deed conveying said lot to Alphonse Archambault was the following clause: "the owner of a lot west of this lot has the right of a driveway on this lot to McNiff Street."

Alphonse Archambault conveyed said lot to Alfred Laramee, by a deed, dated August 19, 1901, containing the following clause: "the owner of the lot west of this lot has the right of a driveway on this lot to McNiff Street."

The plaintiffs purchased the same lot from Alfred Laramee on December 18, 1911, and their deed contained the following clause: "this conveyance is made subject to the right of way over said premises referred to in said deed," referring to the deed last above mentioned.

At the time John B. Archambault conveyed the cottage lot, so-called, to this defendant there was a fence along the northerly side of the path, which has always remained there. The defendant, on August 6, 1901, purchased from Lucien Archambault a lot of land west of his cottage lot and adjoining it. The lot purchased from Lucien Archambault was bounded westerly by a platted street known as McGlynn Street, being the highway delineated on plaintiff's exhibit "A" simply as "Street."

Seven years and one-half before the bringing of this action the defendant built a two family house on the lot which he purchased from Lucien Archambault, which is west of and

bounds upon the so-called cottage lot, and he has occupied that house ever since and rented the other tenement and likewise the cottage.

The plaintiffs placed a gate on McNiff Street at the easterly end of the path or driveway on April 21, 1917, and the defendant tore it down. Two weeks later the plaintiffs erected another gate which was immediately knocked down by the defendant. Within a day or two thereafter a third gate was put up at the same place by the plaintiffs and that gate was knocked down by the defendant.

At the trial in the Superior Court it was agreed that the only issue in the case was to be whether or not the defendant committed trespass when he removed the gates erected by the plaintiffs across the path or driveway on McNiff Street; in other words, the trial was had solely on the first count of the declaration.

It has not been disputed that the defendant, his ten children, his tenants and tradesmen in general, used the way for the purpose of gaining ingress to and egress from the two-tenement house in which the defendant lived on the lot west of the so-called cottage lot also owned by the defendant, from the time the house was built, seven and one-half years before the trial, as well as for ingress and egress to and from the cottage lot.

The defendant has pleaded an unobstructed right of way by prescription for more than ten years; also an unobstructed right of way by necessity; and while admitting the entrance upon the way and taking down the gates, claims that the gate erected by the plaintiffs was an obstruction to his right of way and that he was justified in removing it.

As to the claim of a right of way by prescription the evidence does not support such claim. There is no need to claim a right of way by prescription so far as the use of the way for entrance and egress to and from the cottage lot is concerned, because from the outset he had a right of way by necessity to the cottage lot, and all the evidence is to that effect; there was no other way to get to and from the cottage

lot to the highway except over the land of his grantor, John B. Archambault. The defendant had as much right to use the way as appurtenant to this cottage lot the first moment that he took possession of it as he ever had, and the only relevancy of the evidence as to continued and uninterrupted user of the way would be to show what was the way set out and defined by the grantor over the grantor's land, if in fact the right to use that particular way for that purpose were ever disputed, which it never was so far as the evidence discloses.

It is to be noted also, that when in September, 1896, John B. Archambault conveyed the land now owned by the plaintiffs and his grantee in turn conveyed the same land to Alfred Laramee, August 19, 1901, the deeds contained the clause, "the owner of the land west of this lot has the right of a driveway on this lot to McNiff Street" and that the deed to the plaintiffs from Alfred Laramee, December 18, 1911, is made subject to this same right of way; this language served to further define the location and extent of the right of way, and to notify the plaintiffs and their predecessors in title of its existence in favor of the defendant and to estop the plaintiffs and their predecessors from disputing it so far as it was lawfully appurtenant as a way of necessity to the defendant's cottage lot. Further it is to be noted that the words of the reservation of the right of way are "the right of a driveway," and do not say an "unobstructed" right of way.

As to the testimony regarding the use or attempted use of this way as appurtenant to the lot westerly of the cottage lot, where the defendant's two-tenement house was built, it appears that this two-tenement house was built seven and one-half years prior to the trial or about 1911-1912; prior to that time it appears that the defendant used the westerly lot as a vegetable garden for himself and family, and the evidence entirely fails to show any such continuous and uninterrupted use of the way for purposes of ingress and egress to and from this garden lot, or for carrying mate-

rial to and from the garden lot, over the way, as to give any support to the claim, which does not appear to be very strongly urged, that the defendant had acquired any prescriptive right to the use of the way as appurtenant to the westerly lot. Of course the defendant could not claim any way of necessity to the westerly lot, because it was not cut off from the street by the land of defendant's grantor, but in fact was bounded on McGlynn Street, a platted street (though not a public highway), to which the defendant had always a right of access from his land. We find that, so far (1) as the defendant used the right of way from McNiff Street for purposes of ingress and egress to the westerly or garden lot, such use was unauthorized and was hostile to the plaintiffs' interests as owners of the fee in the way as increasing the burden thereon beyond the servitude lawfully created thereon; but the evidence is not sufficient to show such hostile and adverse use for a sufficient length of time to ripen into a prescriptive right under the statute.

It is too well settled to require argument that the defendant could not claim that by reason of the contiguity of his cottage lot to his garden lot, he acquired any right to use the way to his cottage lot as appurtenant to his garden lot; although there is evidence tending to show that he, at one time, had such a claim in mind, when he put in much testimony tending to show the inconvenience that would result to him, if he was obliged to make his way out from the garden lot by way of McGlynn Street and was not allowed to use the way out to McNiff Street in connection with the garden lot and the two tenement house thereon erected. "In the case of a right of way to certain land by prescription, as in that of one by grant, the way cannot be used for the purpose of going to and from other land beyond." I Tiffany Real Property, Chap. 12, Par. 322. See also, *Evans* v. *Dana*, 7 R. I. 306, 311.

The only real question which is here involved is whether the placing of the gate on the easterly end of the way at McNiff Street was such an obstruction to the lawful use of

the way by the defendant as to warrant him in removing it.
We find that the great weight of authority favors the erec-
(2) tion and maintenance of such a gate as was here erected by
the plaintiffs.    The evidence shows that the gate was of
light construction, not locked but hooked or bolted in such
a way that a child of tender years could open it; the evidence
in fact shows that it was constantly, immediately after
erection, opened by the children of the defendant who were
of various ages from three to twelve years.    There is no
evidence that the gate in question could not be opened and
swung easily even by children;  so that the defendant's
contention simply amounts to a claim that, as matter of law,
he has a right to unobstructed passage, and that in law the
gate is an unauthorized obstruction.

We are of the opinion that the defendant's contention is
opposed to the great weight of authority upon this point.
This court has itself held in *Griffin* v. *Gilchrist,* 29 R. I. 200,
in effect that a reasonable gate constructed at the inter-
section of a private way with the highway is not an unlawful
or substantial interference with the use of the way;  see also
*Short* v. *Devine,* 146 Mass. 119;  *Boyd* v. *Bloom,* 152 Ind.
152;  *Connery* v. *Brooke,* 73 Pa. St. 80;  *Whaley* v. *Jarrett.*
69 Wis. 613;  *Ames* v. *Shaw,* 82 Me. 379;  *Houpes* v. *Alderson* ·
22 Iowa, 160;  *Huson* v. *Young,* 4 Lans. 63;  *Maxwell* v.
*McAtee,* 9 B. Monroe (Ky.) 20.

The law is well summed up in Jones on Easements, § 406,
as follows:  "It is reasonable that the owner of the fee in
land subject to a right of way should maintain a gate at the
point where it intersects a public road.    While such a gate
may be a slight inconvenience to the owner of the easement,
it may be quite essential for the use and enjoyment of the
land.    It may be true that the owner of the servient estate
cannot maintain an unreasonable number of gates, or other-
wise unnecessarily interfere with the use of the way by the
owner of the dominant estate;  but we think it entirely clear
that maintaining a gate at the place where the private way
intersects a public road is a reasonable and legitimate

exercise of the right which resides in the owner of the fee. We have found no substantial diversity of opinion upon this question for the authorities are well agreed that it is the right of the owner of the servient estate to swing a gate across the private way."

It may be noted in this connection that the defendant himself for many years maintained a gate upon his own line at the cottage lot where the way entered upon his land.

It is true that in some of the cases above cited it is said that the question, whether a gate is an unreasonable obstruction to a way, is a question for the jury. But in this case, there is no evidence that the gate was an unreasonable obstruction, but all the evidence is to the contrary.

We find that the trial judge committed no error in directing the jury to return a verdict for the plaintiffs, and the defendant's exception thereto is overruled.

The case is remitted to the Superior Court sitting in Kent County, with direction to enter judgment for the plaintiffs on the verdict.

*Murphy, Hagan & Geary*, for plaintiff.   *John F. Murphy*, of counsel.

*Archambault & Archambault*, for defendant.